IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jimmy Lee Williams, #331836, | ) | C/A No. 5:15-02106-MGL-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, Lieber Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Jimmy Lee Williams ("Petitioner"), a state prisoner, filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("R&R") on Respondent's Return and Motion for Summary Judgment filed September 4, 2015.  ECF Nos. 16, 17. On September 8, 2015, pursuant to *Roseboro v. Garrison*,[1] the court advised Petitioner to file a Response to Respondent's Summary Judgment Motion if he wished to pursue his case. ECF No. 18. On October 16, 2015, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 24. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 16, be granted.

I.    Background

Petitioner is currently incarcerated in the Lieber Correctional Institution of the South Carolina Department of Corrections ("SCDC").  ECF No. 1 at 1. In 2005, Petitioner was indicted during the May term of the Horry County Grand Jury for murder (2008-GS-26-1689). ECF No.

_____

[1] 528 F.2d 309 (4th Cir. 1975).

17-1 at 3-4. Petitioner proceeded to a jury trial from November 10, 2008, to November 14, 2008, before the Honorable Edward B. Cottingham, Circuit Court Judge. *Id.* at 74. Petitioner was represented by Paul Taylor, Esquire, and Assistant Solicitors Lawrence Filiberto and George Henry Debusk represented the State. *Id.* Petitioner was tried with co-defendant Anthony Quentin Scott who was represented by Charles David Barr. *Id.* After the trial, the jury found Petitioner guilty of murder, App. 378,[2] and Judge Cottingham sentenced Petitioner 30-years imprisonment, App. 389.

Joseph L. Savitz, Senior Appellate Defender, represented Petitioner in the appeal of his conviction and sentence. ECF No. 17-2. In his appellate brief, Petitioner raised the following issue:

> The trial judge erred by denying Williams's motion for a directed verdict of acquittal, as the State's circumstantial evidence against Williams was too insubstantial to rise above a mere suspicion that he was guilty.

*Id.* at 4. The State filed a Response Brief on January 8, 2010. ECF No. 17-3. On December 14, 2010, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion. ECF No. 17-4. On December 30, 2010, the South Carolina Court of Appeals issued a Remittitur. ECF No. 17-5.

II.     Procedural History

John Mobley, Esq., represented Petitioner during Post-Conviction Relief ("PCR") proceedings. On December 2, 2011, Petitioner filed an application for PCR and made the following allegations of ineffective assistance of counsel:

> a.  Failure to request lesser charges of Aiding and Abetting and Accessory After the Fact.

---

[2] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That appendix is available at ECF No. 17-1 in this habeas matter.

    b. Failure to object to improper character evidence.
    c. Failure to object to an improper jury charge on circumstantial evidence charge.
    d. Stating in opening statement that Petitioner's defense was self-defense admitting Petitioner's killed the victim, yet presenting no evidence of that self-defense during the trial.

ECF No. 17-1 at 7-9. Assistant Attorney General Tyson Andrew Johnson filed a Return on behalf of the State. ECF No. 17-6. A PCR hearing was held on April 23, 2013, before the Honorable Larry B. Hyman, Jr. ECF No. 17-1 at 19. Petitioner was present and represented by PCR Counsel Mobley, and Attorney Johnson appeared for the State. *Id.* Petitioner and his trial counsel testified as witnesses during the PCR hearing. App. 3-52. In an Order filed June 17, 2013, the PCR court denied Petitioner's PCR Application in full, finding Petitioner raised the following allegations and making the following findings of fact and conclusions of law:

## ALLEGATIONS

Applicant alleged in his Application for PCR that he is being held in custody unlawfully for the following reasons:

1. "Failure to request lesser charges of Aiding and Abetting and Accessory After the Fact."
2. "Failure to object to improper character evidence."
3. "Failure to object to an improper jury charge on circumstantial evidence charge."
4. "Stating in opening statements that Petitioner's defense was self-defense admitting Petitioner's killed the victim, yet presenting no evidence of that self-defense during the trial."

At the opening of the Applicant's case, his counsel advised the Court that Applicant was waiving the first three claims, and that they were only going forward on the fourth claim of "Stating in opening statements that Petitioner's defense was self-defense admitting Petitioner killed the victim, yet presenting no evidence of that self-defense during the trial." Accordingly, all other claims are deemed waived and denied, and the Court will address Applicant's only remaining allegation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has

heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (1985).

## Ineffective Assistance of Counsel

Applicant alleges his conviction at trial is the result of ineffective assistance of counsel. The burden of proof is on the applicant in a PCR proceeding to prove the allegations in his application. Bell v. State, 321 S.C. 238, 467 S.E.2d 926 (1996); Rule 71.1(e), SCRCP.

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Judge v. State, 321 S.C. 554, 471 S.E.2d 146 (1996).

In order to prove prejudice, an applicant must show that but for counsel's errors, there is a reasonable probability the result at trial would have been different. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Id. Where trial counsel articulates a valid reason for employing certain trial strategy, such conduct should not be deemed ineffective assistance of counsel. Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1995); Stokes v. State, 308 S.C. 546, 419 S.E.2d 778 (1992).

This Court will now address the allegation of ineffective assistance of counsel:

### The defense of self-defense

Applicant alleges that his counsel was ineffective for asserting the defense of "self-defense" without presenting evidence of self defense. Applicant did not testify at trial. At the PCR hearing, Applicant and his trial counsel gave sharply divergent accounts on why Applicant did not testify at trial. Applicant indicated he never intended to testify, whereas trial counsel indicated that Applicant only refused to testify after the State rested its case in chief, surprising counsel. Counsel indicated he was essentially ambushed by a suddenly uncooperative client who expressed that he was terrified of testifying after observing other witnesses testifying. Counsel also indicated that Applicant told him that since in Applicant's opinion the state had failed to prove its case, Applicant felt he didn't need to testify.

It is clear to this Court that trial counsel unequivocally intended to put up evidence of self-defense in the form of Applicant's trial testimony but Applicant surprised his trial counsel by refusing to testify. Applicant by his refusal to testify created the peril for which he now complains and blames trial counsel for.

In the testimony of counsel, he made a discovery request, reviewed the discovery with Applicant, met with Applicant in the course of counsel's investigation and discovered Applicant had made incriminating statements to others who were potential witnesses for the State.

In the course of his investigation counsel discovered there were witnesses who could likely testify that Applicant received a telephone call, that he argued on the telephone with a person believed to be the deceased victim, that Applicant left and then returned and made additional statements which were incriminating involving the death of the deceased victim. The shell casing found in Applicant's car was a ballistic match with a gun found in the woods behind Applicant's house. Counsel for Applicant also testified "[Applicant] told me he fired the gun."

Faced with overwhelming evidence of guilt against his client, counsel realized a trial strategy of self-defense was best course of action. Counsel indicated he believed Applicant could have been convicted based upon the circumstantial evidence.

The record also supports counsel's version of the Applicant's decision not to testify, and casts a shadow over Applicant's testimony. The trial judge announced that as there was no evidence presented on self-defense (as neither co-defendant testified) that the court would not charge self-defense. Once the trial judge made it abundantly clear to Applicant and counsel that unless there was additional evidence he would not permit a charge on self-defense, he gave Applicant another opportunity to testify or put up other evidence. Therefore, counsel indicated at page 298, Line 9-11 that he would once again ask Applicant if he wished to testify. The trial judge indicated he would still permit Applicant to testify at page 298 lines 19-21. Knowing without his testimony supporting the defense of self-defense he would be in an unfavorable position at trial, applicant still refused to testify with full knowledge that it would remove his ability to have the self-defense charge to the jury. Applicant now attempts to blame his trial counsel for his decision to not testify.

This Court finds counsel's version of events credible and Applicant not credible. This Court finds that applicant was aware of the consequences of not testifying. Applicant admitted to firing the shot that killed the victim to his trial counsel. Under these circumstances, Counsel's trial strategy of arguing self-defense was well within the professional norms of competent representation. Applicant's decision to sabotage his own defense is not something he can blame his trial counsel for. This Court further finds Counsel's testimony credible and gives it

5

great weight, finding in particular that Counsel had every expectation of calling Applicant as a witness in support of his self-defense claim.

CONCLUSION

Based on the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this Application for Post-Conviction Relief must be denied and dismissed with prejudice.

This Court advises the parties that in order to secure the appropriate appellate review, notice of appeal must be served and filed within thirty (30) days after receipt by counsel of notice of entry of this order. See Rules 203 and 243 of the South Carolina Appellate Court Rules. This Court notes that post-conviction relief counsel must advise an applicant of the right to seek appellate review of a post-conviction relief order. State v. Bray, 366 S.C. 137, 620 S.E. 2d 743 (2005). Also, pursuant to Austin v. State, 305 S.C. 453, 409 S.E. 2d 395 (1991), an applicant has a right to an appellate counsel's assistance in seeking review of the denial of post-conviction relief. Rule 71.1(g), SCRCP, provides that if the applicant wishes to seek appellate review, post-conviction relief counsel must serve and file a notice of appeal on an applicant's behalf.

IT IS THEREFORE ORDERED:

1. That the Application for Post-Conviction Relief be denied and dismissed with prejudice; and
2. The Applicant must be remanded to the custody of the Respondent.

ECF No. 17-1 at 12-17.

On appeal, PCR Counsel Mobley filed a petition for a writ of certiorari to the South Carolina Supreme Court on Petitioner's behalf. ECF No. 17-7. Petitioner presented the following issue for review: "Whether the Lower Court erred in determining Trial Counsel was not ineffective by using a strategy of self-defense based on evidence and when it conflicted with Petitioner's choice to exercise his right not to testify." *Id.* at 2. Assistant Attorney General Joshua L. Thomas filed a Return on behalf of the State. ECF No. 17-8. The Supreme Court denied the petition on April 9, 2015, ECF No. 17-9, and a Remittitur was sent on April 27, 2015. ECF No. 17-10. This federal habeas Petition followed and was filed on May 22, 2015. ECF No. 1.

III.     Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus,

quoted verbatim:

> GROUND ONE: Trial Counsel was ineffective in using a strategy of self-defense
> base upon the states questionable evidence. ECF No. 1 at 6.
> Supporting Facts: [Petitioner includes five pages of narrative in his supporting
> facts section. ECF No. 1-1 at 1-5. Additionally, Petitioner attaches 10 pages of
> transcript from his PCR hearing in the supporting facts section. *Id.* at 6-15.]
>
> GROUND TWO:  Trial Counsel was ineffective in insisting on a trial strategy
> which conflicted with Petitioner 5th Amendment. Right to Exercise his right not to
> testify. ECF No. 1 at 8.
> Supporting Facts: [Petitioner attaches one page of narrative in the supporting facts
> section and one page of transcript from his PCR hearing. ECF No. 1-2.]
>
> GROUND THREE:  Trial Counsel erred by denying Williams's Motion for a
> Directed Verdict of Acquittal, as the State's circumstantial evidence against
> Williams was too insubstantial to rise above a mere suspicion that he guilty! ECF
> No. 1 at 9.
> Supporting Facts:  [Petitioner includes two pages of narrative in his supporting
> facts section. ECF No. 1-3 at 1-2. Additionally, Petitioner attaches 12 pages of
> transcript from his criminal trial proceeding and the unpublished Court of Appeals
> opinion affirming his conviction and sentence in the supporting facts section. *Id.*
> at 3-15.]

B.  Standard for Summary Judgment

The Court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth

specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that

assertion either by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the Court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

### a.    Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by

the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)(emphasis added in original)).  "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412).  In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.  Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of

counsel claims.  First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  *Id.* at 687.  Second, the petitioner must show that this deficiency prejudiced the defense.  *Id.* at 694.  The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398.  The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399.  In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397.  In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.*  The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398.  Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose."  131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state

court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2.     Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011).  Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application.  Rule 203, SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).  Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina

courts.  A PCR must be filed within one year of the judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals.  *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts.  In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in

state court.  If the state courts have applied a procedural bar to a claim because of an earlier

default in the state courts, the federal court honors that bar.  As the United States Supreme Court

explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial
> decisions, but also the finality of those decisions, by forcing the defendant to
> litigate all of his claims together, as quickly after trial as the docket will allow,
> and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance

with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional

violation[,]'" the federal court may consider the claim.  *Smith v. Murray*, 477 U.S. at 533

(quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply

with state procedural requirements and cannot make the required showing of cause and

prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S.

478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by

state rules from returning to state court to raise the issue, he has procedurally bypassed his

opportunity for relief in the state courts and in federal court.  A federal court is barred from

considering the filed claim (absent a showing of cause and actual prejudice).  In such an instance,

the exhaustion requirement is technically met and the rules of procedural bar apply.  *See Teague*

*v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*,

501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

           3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider

claims that have not been presented to the South Carolina Supreme Court in limited

circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495-96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

IV.    Analysis

A. Merits

Respondent concedes that all three habeas grounds are "ripe for consideration under the deferential review standards afforded these cases." ECF No. 17 at 13. Specifically, Respondent represents that "Grounds One and Two were raised to and ruled upon by the PCR judge, and raised in the PCR appeal." *Id.* Additionally, Respondent maintains that "Ground Three was raised at trial and in the direct appeal." *Id.* Therefore the undersigned will address the three Grounds raised in this habeas Petition on the merits.

1.    Grounds One and Two

In Grounds One and Two Petitioner argues trial counsel was ineffective in using the self-defense strategy and in insisting on using this strategy because it conflicted with Petitioner's Fifth Amendment rights. ECF No. 1 at 6, 8. Respondent addresses these Grounds simultaneously because the PCR Court addressed the grounds together in its Order of Dismissal. ECF No. 17 at

13. Respondent moves for summary judgment on Grounds One and Two and argues "the record reflects the PCR judge correctly identified and utilized the well-established *Strickland* standard." ECF No. *Id.*

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

At the PCR hearing, trial counsel Taylor was asked if he had made the decision to use self-defense as Petitioner's defense at trial, and he responded:

> I felt that [Petitioner] had to given the discovery in the case. No question the weapon was found in the backyard behind where [Petitioner] was found in the wood line. [Petitioner] had made some incriminating statements and there was some – there was two witnesses that put [Petitioner] at a party where there was a cell phone call that was made from [Petitioner] with the deceased. There was an argument that ensued as a result of that. He leaves upon arguing in front of witnesses at this party and he does down -- they were arguing because the victim had said and was alleging that [Petitioner] had, had broken into his house and stole his drugs and some money. [Petitioner] and the victim were friends. Basically, my defense of the case was is that he went down there and the victim fired at him and [Petitioner] then returned fire to him and was -- the victim was killed at that time. And that was the whole strategy of my case. There's no -- I mean he placed him -- there was witnesses that placed him going down there. He made statements to guns found, you know, at his location. His cousin is there, he cousin is a witness to the whole thing as well. And so my trial strategy was that the victim had lured him to come down to where he was located in order to kill

him. There was a gun in the victim's hand, it was in his right hand. There was blood all over it but I mean there was a gun in his hand. So, my defense was was that the victim had lured him down and the victim -- in order to kill or potentially kill [Petitioner]. That was my whole -- from the point in time that I reviewed the discovery and he said it was definitely a trial, he was not gonna plead to anything, that was the strategy that I took in the case.

App. 6-7. When PCR counsel asked Attorney Taylor if, in order to establish self-defense and the admissions that would go along with it, there was a pretty good chance that Petitioner would have been convicted of murder, he responded:  "I had to explain. . . .why the shell casing that was in [Petitioner's] car matched the gun that was found at his location." App. 8.  Additionally, Attorney Taylor testified that there was a gun found in the wood line behind Petitioner's home. App. 12. Further, Attorney Taylor testified that the State executed a lawful search warrant and in Petitioner's car found a shell casing of a .22 long rifle that "was sent to SLED along with this firearm and the SLED expert matched that shell casing to the gun found behind his house. . . ." App. 15.

Attorney Taylor admitted that during his opening statement he represented to the jury that the victim lured Petitioner to the scene of the shooting in order to kill him. App. 22. Attorney Taylor also admitted that Petitioner was at the scene of the crime and fired a shot there. *Id.* Further, Petitioner testified that he told the jury that Petitioner "had the right to protect himself and defend himself." *Id.* Additionally, he testified there was evidence that Petitioner argued on the phone with the deceased, left to go see the victim       , and said he was leaving to go see the victim. App. 26. Moreover, Attorney Taylor represented that when Petitioner returned to the trailer, he and his cousin were carrying a gun. *Id.* Based on the evidence, he testified that arguing self-defense was the best strategy. App. 26-27.

Attorney Taylor testified that he and Petitioner discussed pursuing self-defense during the criminal trial, and Petitioner agreed with the strategy, so "[they] prepared the case in that

fashion." App. 27. He testified that "[i]t was a self-defense case throughout – from the time that [he] reviewed the discovery and went out to see [Petitioner] at the jail. It was always a self-defense case." App. 27-28. When asked whether Petitioner ever disagreed with the self-defense strategy, Attorney Taylor testified, "No, he agreed with me whenever we went through and I went through what his defense was gonna be." App. 28. Attorney Taylor testified that Petitioner was supposed to testify for the self-defense strategy. App. 29. However, Attorney Taylor testified that Petitioner did not take the stand during his criminal trial, because: "When it came time for him to testify, he wanted no part of testifying and thought that they didn't have enough evidence to prove his guilt and that they'd not put in the gun was an appealable issue. That was an issue that we had whenever the State rested." App. 29-30. Attorney Taylor testified that after the State rested, Petitioner did not want to testify, and Attorney Taylor thought "the anxiety of getting in this seat in front of a jury, he wanted no part of that." App. 31. Furthermore, Attorney Taylor testified that Petitioner refused to take the stand because:

> He felt that there was not enough evidence for their—established through the examination, that they did not have enough evidence to convict him, they didn't have anybody that directly linked him to the murder from the standpoint that he went down there with malice aforethought to kill this guy that he had – that the gun was there in the victim's hand and that that had defended himself and he did not want to take the stand. He was scared to death about taking the stand and that was why he decided not to take the stand.

App. 33. In response to Petitioner's refusal, Attorney Taylor testified that he told Petitioner that "from the standpoint of self-defense, [Petitioner] need[ed] to take the stand but [he couldn't] force [Petitioner] to take the stand." *Id.*

During his testimony, Petitioner testified that he and Attorney Taylor discussed using the self-defense strategy during trial. App. 41. However, Petitioner testified that he told Attorney Taylor that he did not "think [they] need[ed] to go [with] self-defense based on evidence that was

– that was set forth in the motion discovery." App. 42. Petitioner testified Attorney Taylor only wanted to pursue self-defense as a trial strategy even through Petitioner told him he did not believe the State had enough evidence to convict Petitioner of murder. App. 43-44. Petitioner testified that he told Attorney Taylor he was not going to testify because he did not agree with the defense choice. App. 45. Further, Petitioner testified that Attorney Taylor never told him that if he did not testify that he would "kill [the] case." *Id.*

Turning to the merits of this habeas ground, the undersigned finds that Petitioner cannot show the PCR court unreasonably applied federal law or unreasonably applied the facts in denying relief upon this claim. Here, the PCR court found that trial counsel's use of self-defense as a trial strategy was "well within the professional norms of competent representation." ECF No. 17-1 at 16. Additionally, the PCR court found that it was trial counsel's strategy to put up evidence that demonstrated self-defense—in the form of Petitioner's testimony—but Petitioner "surprised his trial counsel by refusing to testify." *Id.* at 15. The PCR court recited the State's evidence against Petitioner and found that based on the "overwhelming evidence of guilt against his client, counsel realized a trial strategy of self-defense was the best course of action." *Id.*

Based on the testimony presented during the PCR hearing and the evidence the State had against Petitioner, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Petitioner was unable to demonstrate that trial counsel was deficient in pursuing self-defense or in requesting Petitioner testify to establish the self-defense strategy under the first *Strickland* prong. As the PCR court noted, trial counsel requested discovery, reviewed the discovery with Petitioner, and met with Petitioner during the course of his representation. *Id.* Additionally, the PCR court noted that trial counsel based his strategy on the overwhelming evidence of Petitioner's guilt. *Id.* Thus, Petitioner also failed to meet the second *Strickland*

prong.

Finally, the undersigned notes the PCR court's finding that trial counsel's version of events was credible while Petitioner's version of events was not credible. This credibility determination is entitled to deference. *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003). Further, Petitioner has not clearly shown that the PCR court's credibility determinations were without support. *See Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'") (quoting *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) and *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)). Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Grounds One and Two.

   2.  Ground Three

In Ground Three Petitioner argues the trial judge erred in denying his motion for a directed verdict. ECF No. 9. Further, Petitioner maintains that the State's circumstantial evidence against Petitioner was too insubstantial to rise above a mere suspicion that he was guilty. *Id.* Respondent maintains that the federal court's review of the sufficiency of evidence is sharply limited. ECF No. 17 at 17. Further, Respondent argues that the "trial record supports the trial court's ruling, which was reasonably affirmed by the South Carolina Court of Appeals, [and] Petitioner cannot show, in light of this record, that "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Id.* at 20 (citation omitted).

On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. *State v. Lollis,* 541 S.E.2d 254, 256 (S.C. 2001); *State v. Burdette,* 515 S.E.2d 525, 531 (S.C. 1999); *State v. Kelsey,* 502 S.E.2d 63, 69 (S.C. 1998). When

ruling on a motion for a directed verdict, the trial court is concerned with the existence of evidence, not its weight. *Burdette,* 515 S.E.2d at 531; *State v. Wakefield,* 473 S.E.2d 831, 835 (S.C. Ct. App. 1996). "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury." *Lollis,* 541 S.E.2d at 256. "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. Rosemond,* 589 S.E.2d 757, 758 (S.C. 2003).

Allegations of insufficiency of evidence to convict made in a federal habeas corpus action are considered to be claims of denial of due process. *See Pope v. Netherland,* 113 F.3d 1364, 1368 (4th Cir. 1997) ("Any challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction") (internal citations omitted). Such claims are cognizable in habeas actions in this court, however, our review in this area is "'sharply limited.'" *Wilson v. Greene,* 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West,* 505 U.S. 277, 296 (1992)). The *Wilson* court determined that district courts are required to give significant deference to the state court's ruling on motions for directed verdict and similar challenges to the sufficiency of evidence to convict because "[f]ederal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." 155 F.3d at 405–06. This deference requires this court to consider that "a defendant is entitled to relief only if 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Id.* at 406 (quoting *Jackson v. Virginia,* 443 U.S. 307, 324, (1979)).

At the conclusion of the evidence, Petitioner's trial counsel moved for a directed verdict and argued he "did not believe that the State ha[d] proven their case beyond a reasonable doubt

so that it c[ould] go to the jury." App. 280. After hearing the State and Petitioner's arguments, the trial court held: "There is evidence, and it's primarily circumstantial, admitted, but there is sufficient evidence to go forward with the trial of this case, and I, therefore, one, respectfully deny your motion, counsel. . . ." App. 290. In making its ruling, the trial court noted that the gun cartridges found in Petitioner's car came from the weapon that was found in the tree line behind Petitioner's home. App. 284. On appeal, the South Carolina Court of Appeals affirmed Petitioner's conviction and cited to *State v. Weston*, 625 S.E.2d 641, 648 (S.C. 2006) and its holding: "If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury." ECF No. 17-4.

Having reviewed the parties' submissions to the court and both the trial and PCR transcripts and giving the trial court's determination on the sufficiency of the evidence to convict the significant deference to which it is entitled under applicable federal law, the undersigned agrees that the trial court had ample evidence on which to deny Petitioner's directed verdict motion. Based on the evidence before the trial court, Petitioner has not shown that he was denied due process at his trial. *See* 28 U.S.C. § 2254(e) (1) (to be entitled to habeas relief, petitioner must prove by clear and convincing evidence that the state court unreasonably determined the facts in light of the evidence presented in state court).

Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Ground Three be dismissed.

V.     Conclusion and Recommendation

Therefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 16, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

March 10, 2016                                      Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**